IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERNESTO GONZALEZ RAMOS,

    Petitioner,

v.                                                        No. 1:25-cv-00975-MLG-KRS

GEORGE DEDOS, in his official capacity
as Warden of Cibola County Correctional Center;
MARY DE ANDA-YBARRA, in her official capacity
as Field Office Director of the Immigration and
Customs Enforcement, Enforcement and Removal
Operations; KRISTI NOEM, in her official capacity
as Secretary of the U.S. Department of Homeland Security;
and PAM BONDI, in her official capacity as
Attorney General,

    Respondents.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Ernesto Gonzalez Ramos was detained by Immigration and Customs Enforcement ("ICE") agents while at his workplace in Downey, California. Doc. 1 at 4 ¶¶ 21, 23 (English Translation of Petitioner's Declaration). He is presently confined at the Cibola County Correctional Center in Milan, New Mexico; he has been held there since June 25, 2025. *Id*. at 2-3 ¶¶ 10-11, 14. The question presented in this matter is whether his continued detention, without a bond hearing, comports with relevant statutory law and decisional authority. The Court holds that it does not.[1] Gonzalez Ramos is entitled to a bond hearing.

---

[1] Nearly every other court to address the matter has reached a similar result (including this one). *See Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729, at *4 (D.N.M. Sept. 17, 2025); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-01031-KG-JFR, 2025 WL 3187432 (D.N.M. Nov. 14, 2025); *Cortez-Gonzalez v. Noem*, No. 2:25-cv-00985-MLG-KK, 2025 WL 3485771, at *4 (D.N.M. Dec. 4, 2025); *see also Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1257-61 (W.D.

1

## I. BACKGROUND

Gonzalez Ramos is a noncitizen present in the United States without admission or parole. Doc. 1 at 1 ¶ 1; Doc. 12 at 1 ¶ 2. For that reason, the Department of Homeland Security ("DHS") initiated removal proceedings against him. Doc. 12 at 2 ¶ 5. Gonzalez Ramos remains in custody. *Id.* ¶ 10. Seeking release, he filed a Petition for Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 on October 7, 2025. Doc. 1. Gonzalez Ramos asserts that his continued detention at in the Cibola County Processing Center violates 8 U.S.C. § 1231(A)(6), the Fourth Amendment, and the Fifth Amendment. Doc. 1 at 8-13 ¶¶ 35-53. After receiving Gonzalez Ramos's filing, the Court required him to effectuate service on the Respondents. Doc. 3. Once served, Director De Anda-Ybarra, Secretary Noem, and Attorney General Bondi ("Federal Respondents") filed a Response to the Petition for Writ of Habeas Corpus on October 27, 2025. Docs. 6, 7. They argue Gonzalez Ramos's detention is lawful and comports with § 1225. Doc. 12 at 4-6.

The Court held a hearing on the Petition thereafter. Doc. 20. After some discussion on the matter, Gonzalez Ramos requested that he be afforded leave to withdraw his original Petition and file a new pleading that includes a request for a bond hearing pursuant to 8 U.S.C. § 1226. *See id.* The Court ultimately allowed Gonzalez Ramos to file an amended Petition (rather than begin his writ anew). *Id.*

On November 12, 2025, Gonzalez Ramos filed his Amendment to Petition for Writ of Habeas Corpus ("Amendment") asserting that his prolonged detention without an individualized

---

Wash. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 483-91 (S.D.N.Y. 2025); *Jimenez v. FCI Berlin*, No. 25-cv-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Cerritos Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282, at *4-5 (D. Ariz. Oct. 3, 2025) (collecting cases); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *5 n.8 (N.D. Ill. Oct. 16, 2025) (collecting cases).

bond hearing violates the Fifth Amendment's Due Process Clause and is also inconsistent with § 1226. Doc. 21 at 2:1-2:7.[2] Federal Respondents filed a Response to the Amendment, asserting Gonzalez Ramos's detention is mandatory as required by § 1225(b). Doc. 23 at 4-13.[3]

## II.  DISCUSSION

### A.  Legal Standard for Writ of Habeas Corpus

This Court is authorized to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

### B.  The Relevant Statutes

The primary question presented in Gonzalez Ramos's Amendment is whether 8 U.S.C. § 1225(b) or § 1226 governs. *See* Doc. 21. Although both statutory provisions address the detention

---

[2] The parties do not address whether Gonzalez Ramos requested an individualized bond hearing prior to filing his Petition or Amendment. *See* Docs. 1, 12, 21, 23, 25. Regardless, on September 5, 2025, the Board of Immigration Appeals ("BIA") issued *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). In its decision, the BIA "categorically considers anyone arrested within the United States and charged with being inadmissible to be subject to detention under 8 U.S.C. § 1225(b)(2)(A)." *Pu Sacvin*, 2025 WL 3187432, at *2 (internal quotation marks omitted) (quoting *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS, 2025 WL 2591530, at *1, *7 (C.D. Cal. Sept. 8, 2025)). Additionally, the decision purports to preclude immigration judges ("IJ") from providing § 1226(a) bond hearings to people present in the United States unlawfully due to lack of jurisdiction, "rendering any attempt to seek relief directly from the agency futile." *Pu Sacvin*, 2025 WL 3187432, at *2.

[3] Respondent George Dedos, Warden of Cibola County Correction Center, joined in the Federal Respondents Responses to the Petition and Amendment. Docs. 17, 24.

3

of noncitizens[4] prior to a final order of removal, they have distinct applications. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

1.  **Section 1225(b)**

Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission."[5] *Jennings*, 583 U.S. at 297. It requires, inter alia, that all applicants for admission be inspected by an immigration officer. § 1225(a)(3). During that process, the immigration officer must determine whether an applicant is covered by either §§ 1225(b)(1) or 1225(b)(2). *See Jennings*, 583 U.S. at 287. Noncitizens who are arriving in the United States and initially deemed inadmissible under §§ 1182(a)(6)(C) or (a)(7) due to fraud, misrepresentation, or lack of valid documentation are treated in accordance with § 1225(b)(1)(A)(i). Other noncitizens may also fall within the statute's purview as designated by the Attorney General if they have not been admitted or paroled *and* were not continuously present in the United States for the two-year period prior to that determination. *See* § 1225(b)(1)(A)(iii). Section 1225(b)(1)(A)(ii) also addresses the situation where, during the inspection process, the noncitizen indicates either a fear of persecution or an intent to apply for asylum. If the immigration officer deems that claim credible, then the noncitizen must be "detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). The relevant regulations regarding positive credible-fear determinations control the process thereafter. 8 C.F.R. § 208.30(f).

Section 1225(b)(2) of Title 8 of the United States Code addresses those persons who are seeking admission into the country but whom are not otherwise covered by § 1225(b)(1). It requires

---

[4] The Court uses the term aliens and noncitizens interchangeably.

[5] Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ." All applicants for admission must be inspected by an immigration officer. § 1225(a)(3).

4

that the noncitizen be detained provided "the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted . . . ." § 1225(b)(2)(A). Noncitizens covered by § 1225(b)(2) are not subject to the expedited removal process outlined in § 1225(b)(1). They receive some process, including an evidentiary hearing before an IJ, the right to counsel, and the right to seek review by the BIA and a federal court of appeals. § 1225(b)(2)(A); § 1229a; *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020).

    2.    **Section 1226**

Section 1226 is a separate statute addressing circumstances not covered by § 1225. It sets "the default rule" for detaining noncitizens "already present in the United States." *Jennings*, 538 U.S. at 303. Per § 1226(a), a noncitizen "*may* be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." (emphasis added). Custody is not predetermined. Noncitizens detained pursuant to § 1226(a) are entitled to individualized bond hearings as described by federal regulation. *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). During those proceedings, an IJ is tasked with determining whether the noncitizen is either a flight risk or a danger to the community. *Id.* at 303. If either question is resolved in the affirmative, then the noncitizen will be detained. *See Rodriguez*, 779 F. Supp. 3d at 1262 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) for the proposition that "an IJ will order a detainee released on bond if the person is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk'")). Otherwise, bond and conditions of release are appropriate. *Id.* There are some instances in which custody is required—including those outlined in Section 1226(c). But, generally speaking, those provisions apply to circumstances in which a noncitizen has "committed or been sentenced for certain

criminal offenses, or because they are affiliated with terrorist groups or activities." *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *3 (D. Mass. July 7, 2025) (citing §§ 1226(c)(1)(A)-(D)).

C. **Section 1226 governs Gonzalez Ramos's detention.**

    1. **Section 1225(b)(2) is inapplicable.**

Federal Respondents take the position that § 1225(b)(2)(A) mandates Gonzalez Ramos remain detained because he is an "applicant for admission" after unlawfully entering the United States without admission and choosing to remain in the country without inspection "for years." Doc. 23 at 13-14. This argument is inconsistent with the text of § 1225(b)(2)(A). Section 1225(b)(2)(A)'s detention provision comes into effect only after all of the following conditions are satisfied: (1) an "examining immigration officer" (2) must conclude during an "inspection" (3) of an "applicant for admission" (4) who is "seeking admission" (5) that the individual "is not clearly and beyond a doubt entitled to be admitted[.]" *See also Jimenez*, 2025 WL 2639390, at *4. The active construction of "the phrase 'seeking admission' . . . necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025). Noncitizens, like Gonzalez Ramos, "who reside in the country for decades are not 'seeking admission.' They are 'no longer seeking to enter the United States (lawfully or otherwise)'—they are already here." *Cortez-Gonzalez*, 2025 WL 3485771, at *4 (quoting *Jimenez*, 2025 WL 2639390, at *8); *see also Pu Sacvin*, 2025 WL 3187432, at *3 ("Noncitizens 'seeking admission' are those who have not 'effected an entry' into the United States." (quoting *Thuraissigiam*, 591 U.S. at 140)). Only a "[noncitizen] seeking admission" falls within § 1225(b)(2)(A)'s mandatory detention scheme. To conclude that all "applicants for admission" are continuously "seeking admission" for as long as they live in the United States "goes against the plain, ordinary meaning of the words 'seeking' and

'admission.'" *Romero v. Hyde*, 795 F. Supp. 3d 271, 284 (D. Mass. 2025) (internal quotation marks omitted) (quoting *Lopez Benitez*, 795 F. Supp. 3d at 489); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))).

Other reasons exist to question Respondents' take on the law. To begin with, their interpretation would render the Laken Riley Act ("LRA") as mere surplusage. Earlier this year, Congress passed the LRA, which added additional criminal convictions triggering § 1226's custodial provisions. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) (codified as amended at § 1226(c)(1)(E)).[6] So, "[i]f § 1225(b)(2) already mandated detention of any [noncitizen] who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." *Maldonado v. Olson*, 795 F. Supp. 3d. 1134, 1152 (D. Minn. 2025). The Court doubts that Congress intended such a result. *See Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017) ("The canon against surplusage indicates that [courts] generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning.").

Finally, the Court's interpretation of the relevant statutes accords with the Supreme Court's holding in *Jennings*. 583 U.S. at 289. There, the Supreme Court instructed that "U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It *also authorizes* the Government to detain certain [noncitizens]

---

[6] The LRA amendments mandate detention for noncitizens charged as inadmissible "under Sections 1182(a)(6)(A) (the inadmissibility ground for a noncitizen 'present in the United States without being admitted or paroled'), 1182(a)(6)(C) (the inadmissibility ground for misrepresentation), or 1182(a)(7) (the inadmissibility ground for lacking valid documentation) *and* if the noncitizen has been arrested for, charged with, or convicted of certain crimes." *Rodriguez*, 779 F. Supp. 3d at 1246.

*already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* (emphases added). This interpretation of §§ 1225(b) and 1226(a) is consistent with the due process afforded to noncitizens who have entered the United States. "The distinction between a [noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. Once a noncitizen effects entry into the United States, the Due Process Clause applies "whether [the noncitizen's] presence here is lawful, unlawful, temporary, or permanent." *Id.* Noncitizens who have not yet effected entry are not afforded the same due process rights. *See Thuraissigiam*, 591 U.S. at 103; *see also Cortez-Gonzalez*, 2025 WL 3485771, at *4 n.10 (discussing distinction between merely "set[ting] foot on U.S. soil" and when citizens have effected an entry (quoting *Thuraissigiam*, 591 U.S. at 139-40). With this distinction in mind, it is unlikely that Congress intended the mandatory detention of § 1225(b)(2)(A) to apply to noncitizens already present in the United States. *See Martinez*, 792 F. Supp. 3d at 222; *see also Cortez-Gonzalez* 2025 WL 3485771, at *5 (discussing DHS' previous decades-long application of § 1226 to noncitizens residing in the United States without admission).

For these reasons, the Court concludes Gonzalez Ramos's detention is governed by § 1226(a). Gonzalez Ramos entered the United States in 1998 and has lived here since. Doc. 1 at 4 ¶ 19. He therefore cannot be considered an applicant "seeking admission" pursuant to § 1225(b)(2)(A), as he has lived here for decades.

    **2.    Section 1225(b)(1)'s credible-fear detention mandate is irrelevant.**

On September 24, 2025, Gonzalez Ramos filed an application for asylum with the Executive Office for Immigration Review ("EOIR") due to his fear of future persecution and torture if he is deported to Mexico. Doc. 1 at 1 ¶ 2, 5 ¶ 25, 33. He alleges that his family has experienced violence at the hands of cartel members, which raises the specter of similar harm

8

falling upon Gonzalez Ramos were he to be forced to return to his home country. *Id*. at 2 ¶ 3. His asylum application remains pending. *Id*. at 9 ¶ 36; Doc. 12 at 2 ¶ 9.

Federal Respondents argue that Gonzalez Ramos must be detained while his asylum application is pending. *See* Doc. 23 at 15-17. The Court disagrees. As Respondents admit, Gonzalez Ramos is not subject to the expedited removal process of § 1225(b)(1). Doc. 12 at 6; Doc. 23 at 17. He is not an "arriving alien," nor does he fall under the conditions of "certain other aliens" subject to § 1225(b)(1)—he has lived in the United States for almost three decades. Doc. 1 at 4 ¶19; §§ 1225 (b)(1)(A)(i), (iii). Accordingly, his asylum application does not fall under the credible-fear inspection process nor the mandatory detention provisions under §§ 1225(b)(1)(B)(ii) and (iii)(IV).[7]

### D.     Respondents are violating Gonzalez Ramos' Fifth Amendment rights.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

---

[7] Respondents fail to consider that there are additional ways for a noncitizen to apply for asylum. Generally, a noncitizen may apply for asylum in one of three ways:

> (1) if [he] is not in any kind of removal proceeding, [he] may file an affirmative application for asylum, *see* 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.1(a)(1); (2) if [he] is subject to regular removal proceedings under 8 U.S.C. § 1229a, [he] may file a defensive application for asylum as a defense to removal, *see* 8 U.S.C. § 1229a(c)(4); 8 C.F.R. § 208.2(b); or (3) if [he] is subject to expedited removal proceedings under 8 U.S.C. § 1225, [he] may also file a defensive application for asylum as a defense to expedited removal, *see* 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 208.30(f).

*O.A. v. Trump*, 404 F. Supp. 3d 109, 121 (D.D.C. 2019). Here, Gonzalez Ramos applied for asylum pursuant to the second option. *See* Doc. 25 at 4-5.

While Respondents argue that Gonzalez Ramos "'has only those rights regarding admission that Congress has provided by statute[,]'" precedent clearly demonstrates noncitizens who have effected an entry to this country are entitled to due process. *See* Doc. 23 at 4 (quoting *Thuraissigiam*, 591 U.S. at 140); *Zadvydas*, 533 U.S. at 693; *supra* Section II.C.1. Gonzalez Ramos's detention and removal proceedings are therefore subject to the Fifth Amendment.

Because § 1226 governs Gonzalez Ramos's detention, he is entitled to an individualized bond hearing before an IJ. *See* § 1226(a)(2); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *Salazar*, 2025 WL 2676729, at *6; *Pu Sacvin*, 2025 WL 3187432, at *3. At that hearing, Respondents must prove, by clear and convincing evidence, that Gonzalez Ramos is not a flight risk nor a danger to the community.[8]

### III.  CONCLUSION

For the reasons above, the Court grants Petitioner Ernesto Gonzalez Ramos's Petition for Writ of Habeas Corpus and subsequent Amendment, Docs. 1, 21. The Court concludes that 8 U.S.C. § 1226(a) governs Gonzalez Ramos's detention. Respondents are hereby ordered to provide Gonzalez Ramos with an individualized bond hearing pursuant to § 1226 within seven days of the date of this Order. Respondents shall bear the burden of justifying Gonzalez Ramos's continued detention by clear and convincing evidence. Respondents are further ordered to file a status report within ten days of this Order to certify compliance. The status report shall include when the bond

---

[8] Normally, the burden at the bond hearing is on the noncitizen to demonstrate detention is unwarranted. *Salazar*, 2025 WL 2676729, at *6 (first citing 8 C.F.R. § 236.1(c)(8); then citing *In Re Adeniji*, 22 I.&N. Dec. 1102, 1116 (BIA 1999)). Given the ongoing violation of Gonzalez Ramos's due process rights, this Court agrees with the other courts who have addressed similar cases and found that the burden at the individualized bond hearing has shifted to Respondents. *Pu Sacvin*, 2025 WL 3187432, at *3 (joining "most other district courts in concluding that a noncitizen's 'strong private interest in being free from civil detention' outweighs the Government's comparatively minimal burden to justify custody"); *Salazar*, 2025 WL 2676729, at *6-9.

hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial. If Gonzalez Ramos has not received a lawful bond hearing within seven days, this Court orders that he be immediately released.

    It is so ordered.

                                                  UNITED STATES DISTRICT JUDGE
                                                MATTHEW L. GARCIA